Opinion of th? Court, by
Judge Mills..
Beaydcn declared.in assumpsit, against Goulman, two counts, one for money had.and received to his use, the other for a certain sum, “for the hire of*a certain negro man slave, the property of (he plaintiff;” for a. specific length.of time. Non-assumpsit was pleaded..
On the trial of this issue, the plaintiff gave in dence a.bill of sale for a negro man slave, executed by him to the defendant, in^usual form, expressing a con-., sideration of four hundred .dollars, and warranting to the defendanl the slave forever., and signed and-sealcd? by the plaintiff.
He also gave in evidence another writing, signed and. scaled by the defendant, to this effect:
“ Whereas Robert Braydon hath, (his day sold me, Thomas.H. Goulman, one negro man,by the name of Gilbert, for the sum.of four, hundred.-dollars, I *116 myself, my heirs, Sic. to sell to said Braydon the above name(^ negro man, for the sum of four hundred dollars, at any time, by giving said Gouiman one month’s notice.”
The parolen idence.
The evidence instruc Uns moved "for by defendant. ■
The draftsman of these writings deposed, that, at the request of the parties, he wrote them according to his understanding of the contract, and his impression from their conversation was, that the negro was only to remain as a security for the loan of money, until the sum mentioned in the writings should be paid; that the slave wf»s then worth between seven and eight hundred dollars, and would hire for from one hundred to one hundred and twenty dollars per annum; that it was expressed at the time, if the negro died before the money was restored, the defendant was.to lose him. This latter fact was corroborated by the confessions pf the plaintiff, proved by other witnesses.
Another witness proved (hat the transaction was a loan, and that the money loaned was In the paper of the Bank of Kentucky, then refusing the payment of specie, and the slave was to labo.r for the use and interest of' the money. It was also proved, that the defendant, while he held the slave, had said that he would give two hundred dollars more for the. slave, if the plaintiff would sell him.
The plaintiff further proved, that after some time he tendered the four hundred dollars in notes of the Bank of Kentucky or Bank of the Commonwealth, as a repayment, and demanded the slave. The defendant refused to receive this sum in paper, alleging that the money had depreciated much below what it was when ho loaned it, and required fifty dollars more to make up the depreciation. The plaintiff at first refused to pay the additional sum, but at length did so, reluctantly, and the defendant gave up the slave, but not until the plaintiff would acknowledge that he had no other claims against him in relation to the transaction,
The whole proof of the defendant .conduced to show that the slave had run away, and did not serye a portion of the time, and that his value and hire were worth somewhat, less than the terms spoken of by the plain* tiff’s witnesses.
parties then declared their testimony closed, atiC* the defendant moved for instructions, an^ decisions were given in reply thereto-
Defendant applies for leave to in-witnesses,not summoned, but in court.
Plaintiff ob-oTerruIcdtiu? objection, ft plaintiff ex-
ljj plaintiff”1 5
Instructions given by the CUCUI <-ou!'-
Verdict, mo,-, ti?» *br new tna ’&c'
^ ;l. gainst strict practice, which ought generally to be adhered to, to permit either party, after botli have professed to have gone through their evidence and instructions have been moved, to introduce additional evidence.
*117 The defendant then applied for leave to introduce other witnesses, who were present in court and had not been summoned, to prove the value of the paper loaned, at the lime it was loaned and at the time it was restored, and that, ad interim, there was a real depreciation.
The plaintiff’s counsel opposed the introduction of further evidence, as-irregular and disorderly: but the court permitted it, arid the plaintiff excepted.
The plaintiff then moved the court to instruct the jury, that if they believed,'from the evidence, that the fifty dollars nq addition to the four hundred paid by the plaintiff in redemption of the slave, was extorted from the plaintiff by the defendant’s withholding the slave until it was paid, "and that the plaintiff was coerced by the defendant’s so withholding the slave, to pay it, he was entitled to recover it back in this action, if the contract was' usurious.
The court overruled this motion, and instructed the jury, that as there was a difference between the parties, it was competent for them to agree on the amount to he paid by the plaintiff??? discharge of all actions, and that they might have made and executed such an agreement; and that the defendant giving up the slave, and the plaintiff'paying the money so agreed on, each side in discharge of all actions, was valid and would bar the plaintiff in this action,
The court further, on motion of the defendant, instructed the jury, that if they believed from the evidence, that by the contract the defendant was to lose his money, if (fie slave died while in his possession, the contract was not usurious; but if it mas merely colourable, to conceal the usury, it was not to. be regarded by the jury; but notwithstanding such colourable contrivance, the contract would be usurious, and the plaintiff could not recover.
The jury foqnd for the defendant, and the plaintiff moved for a new trial, which was overruled, and the plaintiff excepted to the opinion of the court as to the instructions and decisions given, and spread the evidence on record, and has brought the case before this court by wiit of error, and complains of each of these decisions.
(1) As to the admission of new witnesses after the parties professed to have gone through their evidence, it may be readily conceded,' that it was against the *118 strict practice which ought generally to be adhered 1$ in conducting causes.
(2) The court 'presiding over a jury-trial, may, whenever necessary for the attainment of complete justice, depart from the rules for the order and time of introducing evidence, and in such departure this court will not interfere, unless injustice be done.
(3) Where the evidence irregularly admitted was competent, this court cannot correct it: for by ¡-ranting a new trial they would only opon a door for .its regular admission.
He who has the affirmative, ought to introduce alb his evidence to make out his side of the issue, then the evidence of the negative side is heard, and finally, the rebutting proof of the affirmalive, which closes the investigation, after giving each a fair opportunity to be thus, heard, in doing- this,, neifher side ought to he permitted to give evidence by piecemeal, then to apply for instructions, and again to mend and add to his proof, until, by repeated experiments, he shall make it come up-to the opinion of the court-.
An adherence to the§e pules, generally, will be found necessary in all courts of original jurisdiction, and without them, confusion, loss of. time, and capt-ious- and irritable conduct must follow.
(2) We say, generally; for it. will often be found necessary and proper for the presiding court, for good reasons, to depart from them, to attain complete jus- ■ (ice; and when they ought or-ought not to he varied,, must, in a great measure, be left to the sound discre-lion-and prudence of the inferior court. And- tins court, for such departure, ought never to interfere, except injustice is done by that departure.
(3) The evidence admitted in this instance, was per-, tinent. R is not objected to, because from its nature it-ought not to be heard; but because it was heard at an improper time, in such a case, we ought not, and cannot give any redress. We ought not, because the evh dence Ras not done injustice, and. that court had the disposition of itsown time, and might or might-not bean it, as time and other good reasons might require. We-cannot, because if we' were to reverse on that account, it would only open, the way to admit the same evidence-in a time and manner which could not be objected to,, and the party who now complains has received no injury which ought to be redressed, and he would again have to submit to the same evidence.
As to the first instruction, had the court refused it a& asked, we could not have interfered. We do not agree-with the plaintiff’s counsel in the instruction asked,, nor with the court in what was given.
(4) Wc should have refused the instruction as asked, because the evidence did not conduce to prove that the-defendant withheld tRe slave to extort more. than.w,hah *119 in conscience he might demand, and because the bare withholding' the slave until a sum of money was paid, could not be deemed such a species of duress as to viti-Me the payment, which, under such circumstances, must be deemed voluntary, and not compulsory. The ■difference -in the value of the Bank notes loaned and ihose returned, was a fair subject of adjustment, and the defendant could, both in law and conscience, be permitted to receive what was equal in value to tlmse which he had loaned; and the retention of the slave "until that value was made up, could not be considered an act of extortion. Thus far as to the instruction asked aa^Uo, . «
(4) Mortga-Seeoia sLve Refusestcfsur-render him,. until the h^Sd ten-(Wed the nominal amoimí m paperu currency he had bor-Pai.c3. Pfi,Qa sum so paid Is n°t extorted, and'no/re-6 coverable ' back.
ts) The ac?. knowledgment of the mortgagor of a slave, that he had rif) further demand on the. mortgagee, extorted from him when he-, paid the mortgage money, as a condition of the re-delivery of the slave, is without consideration, & will not bar an action for the hire of the slave they had usuriously agreed should stand against the interest:
(5) Had the instruction given, been confined to the sum of fifty dollars; had the court only said that it was competent for the parlies to settle the difference value between the bank notes loaned and those offered, and to agree to that difference; and that the agreement, if so made and executed, ought to bar all cause of action for the restoration of the fifty dollars, we should not disturb the verdict.
But why the payment of the fifty dollars was extended to the cause of action, and made to defeat a recovery of the hire loo, we cannot perceive. The claim for hire was in favor of the plaintiff, against the defendant, and it is hard to conceive how the plaintiff oould make an accord, and,pay the satisfaction himself, to get clear of his own cause of action against his adversary. H may be said, that the plaintiff’s agreement that he had no further cause of action, before the other would deliver his slave, ought to bar him. It Would be hard to support that agreement by any valid consideration. The defendant claimed fifty dollars, to make the bank motes as good as those he had furnished to him. This sum was accorded and paid. He was then bound to surrender the slave, and this duty he refused to perform, until the other should say he bad no further cause of action. For the restoration of the slave, the plaintiff had paid ample value, and yet he is to surrender more, before justice is done. If a refusing to restore property pledged to secure usurious loans, until the oppressed party shall agree to abandon all claims for the usury, shall ever be held a good bar to such claims, the statute against usury will soon be a dead letter, and a.contrivance to avoid it will be invented, fatal to all its ef- *120 fectst So far, then, as the court applied this agreement to the claim for usury, paid by the hire, of the slave, or to affect any part of the action, except the claim for the fifty dollars, the instruction was erroneous,
r6] A stipulation in a con-' tract ^con-slave/contended by one partytohave ticmaísale,1 by the other a Mortgage to surious Corin' that if the slave died in theformcr01 ho should lose his money, is not character of the transaction, but good the consideration of the jury, t» show was not^usu-
Szvigert and Monroe, for plaintiff; Crittenden, for defendant.
(6) As to the second instruction, we have been tempted to beiieye that it has been wrongfully transcribed, or that some mistake has been committed by the draftsman; and we are unwilling, if we could, to construe it intoan attempt to tell the jun5 that the oir-cumslauce that the defendant was to lose, his money, if the negro died in his possession, was good evidence’ for their consideration, tending to show (he contract was not usurious, and if so, the plaintiff could not recover; but if, on the contrary, such an agreement to lose the money was a colourable contrivance to conceal the usutTi *-'ne plaintiff could still recover the usury paid in the hire of the slave.
If this meaning could be drawn from it; we would be willing to let it stand as an instruction of which the plaintiff ought not to complain. But the letter forbids this sense, and the negative in the last clause, “ the plaintiff could not recover,” cannot be expunged. This conclusion is a perfect non scqmtur from the premises, and completely barred the plaintiff of a recovery of any thing, even if the jury should believe that the contract was usuri°us‘ The instruction, with this negative in the last clause, was evidently erroneous.*
The judgment must, therefore, be reversed with-costs, and the verdict be set aside, and the cause be remanded for new proceedings to be had, not inconsistent with this opinion.

 The court is correct in Supposing there was an error inthcdrnft of the instructions as they appear in the record. It occurred in the bill of exceptions, by the Circuit Judge misplacing an interlineation. Th'e words, ‘/but-pf it was merely colourable,” &c. “would be usurious,” instead bf preceding the words “ and the plaintiif could not recover,” ought to follow them and conclude the instructions. But. after this correction, the instruction is still materially different from that of which the'eourt say the plaintiff ought not to complain.-'